We'll move on to the next matter. TR13 Enterprises v. Aetna. I said 13. I think it's TR3. Try 3. All right. Mr. Hufford? Yes. Good morning. May it please the Court, my name is Brian Hufford of Pomerantz Grossman Hufford Dahlstrom & Gross. On behalf of Plaintiff Appellant TRI3 Enterprises, Inc., I would like to reserve two minutes of my time for rebuttal. This case actually presents a straightforward application of the well-pled complaint rule. Because if the trial court had accepted as true the well-pled allegations in our complaint concerning the conduct at issue here, it should have upheld our claims as presenting plausible allegations for risk of violations. The court's failure to do so and instead its acceptance of Aetna's arguments in its briefs were the basis for its denial, that stands as a reversible error. TRI3 is a durable medical equipment provider which provides medically necessary devices to patients who are insured by Aetna plans. As an out-of-network provider, TRI3 obtains assignments of benefits from its patients and then submits claims to Aetna, which pays TRI3 directly. In the complaint in this action, TRI3 alleges in great detail how Aetna conducted a post-payment audit of the claims that had been submitted by TRI3 and various of its subsidiaries and then concluded retroactively that it had paid for certain devices, which were FDA-cleared compression pumps to help patients heal after surgeries, which were not in fact covered under the patient's health care plans. Aetna therefore determined that these claims were not properly payable and issued a retroactive denial of benefits, thereby demanding that TRI3 repay over $600,000 in previously paid benefits. In making that decision, however, Aetna provided no opportunity for TRI3 to appeal or to challenge internally the decision that these services were not covered under the patient's plans. But you went forward though, challenging it though, right? We tried to challenge it. We repeatedly tried to argue and tried to present arguments about how these were proper benefits and were properly payable. In a sense, all Aetna did continually is to try to negotiate how much you have to pay. They never provided what's referred to as the full and fair review under ERISA, where you can actually look at the plan documents. I mean, our basic argument is their conclusion was these pumps were not covered under our plans. Under ERISA, that would require you to actually do a full and fair review where you actually identify, where Aetna would be required to identify, what provisions in the plan documents it claims covered these services. Was there a contention that you mischaracterized them in your billing code? Well, the argument that they make is that TRI3 had billed the wrong code. But then the argument was, but if whatever code you would have billed, we would not have covered that service. And, in fact, what's explicitly alleged throughout the complaint is that Aetna says this is not about misconduct. We're not claiming you did something wrong. What we're claiming is this device was not covered. We agree that you, their argument is you billed one thing, you should bill another, but if you had billed the proper code, it would not have been a covered service. Now, Aetna argues that their retroactive action can't be a denial, reduction, or termination under ERISA. And how do you respond to that? Our argument, Your Honor, is that if you're making a benefit denial, whether it's up front or retroactively, it's still an ERISA issue. And, really, if you look at the Worth case and the Levine case, I think that establishes that from the Third Circuit. Because what they hold is that if you're challenging an effort by an insurance company to recover a previously paid benefit, it's still a challenge to the benefits. So it's still an ERISA issue. But it doesn't really seem to fit into the 29 CFR section 2560, does it? Well, if you look at the definition of adverse benefit determination in the CFR, it defines adverse benefit determination as a denial or termination of benefits or failure to pay benefits. In a sense, they're doing it retroactively, but they're denying the benefit. They're claiming we paid once and we said it was covered, but now we're determining retroactively that it should not have been paid. We're denying that coverage. So our view is it falls directly under that definition. And, again, if you look at what happens in what Levine said in Worth, where they say, and this is from Levine, where plaintiffs claim the ERISA plan wrongfully sought reimbursement of previously paid benefits, the claim is for benefits due under ERISA. And it's significant because it cites both the Singh case from the Fourth Circuit and the Arana case from the Fifth Circuit on the same issue, when somebody's trying to recover a previously paid benefit. And what they argue is by doing that, you're really still challenging. And here's what I think was critical in the Fourth Circuit. Application of ERISA is not dependent on the fortuity of when a plan term was misapplied to diminish the benefit. An effort to recover or recoup benefit is no less a claim for recovery of a planned benefit than if it were seeking recovery that was denied in the first instance. So that's really the argument here. It's the same issue. You're still denying the benefit based on the plan documents. This is a 12B6 determination. Yes. You were knocked out of the box right off the start. Yes. What did the district court, what are you asking for in this case? Well, basically what we are asking, in effect, is the due process. We are basically saying that ERISA says that when you deny a benefit based on the plan terms, you have to provide a full and fair review where the insurance company identifies what provisions of the plan they rely upon. Well, apparently the district court sided with Aetna. Yes. What the district court basically said is this is not really a coverage issue. It's a fraud issue. It's based on billing fraud. And therefore, you can go outside. How did the district court get to a fraud issue? Basically, that's what Aetna argued in its briefs. In the complaint, there's a number of communications or the correspondence from Aetna. Virtually all of them, they're identified and summarized in pages three and four. Maybe Mr. Estrada can speak to that, but it does seem like the district court focused on the opposing complaint, the answer to the complaint, as opposed to the allegations of the plaintiffs. Correct. And then that's where we think the court really violated the well-planned complaint rule. It was not accepting as true the allegations that we make in that complaint. But were you yourself suggesting the idea of fraud in your complaint? The only places where a potential fraud allegation came in is in a couple of letters that Aetna cited. That Aetna issued to Tri-3, they referred to the potential of a Medicare fraud issue on a couple of letters. There was never any allegation that there was fraud by Tri-3. In fact, if you look at the specific allegations by Aetna that's in the complaint, it belies that entire suggestion. On paragraph 25 of the complaint, Aetna sent a letter on August 13, 2010, to Tri-3, where it stated that it was entitled to recover the repayment, quote, even if there was no wrongdoing on the part of Tri-3, because its plans do not cover the device Tri-3 provided, and Aetna is entitled to recover payments made pursuant to the overpayment recovery statute without regard to fault. That was the position Aetna was taking when it was trying to get it. And what's critical here also, and this comes from paragraph 20 of the complaint. Let me finish up with this point. Okay. On paragraph 20 of the complaint, Aetna says it was relying on an Indiana state statute and was limiting its coverage to the last two years. Well, the reason why it was limited to two years is because to go beyond two years, you have to have fraud. So Aetna clearly, as alleged in the complaint, was not pursuing this based on fraud. The court's interpretation of fraud was based really on Aetna's post hoc explanation, and that's why accepting the terms of this complaint, we presented a plausible claim under ERISA. Just one more question. I know you had a lot of dealings with their SIU, the attorney for the SIU. Yes. But there's also a fact in here that I guess you contacted somebody else, and they had no record of any of this, a claim for repayment? Yes, Tri-3 tried to file an ERISA appeal. So they actually filed a formal ERISA appeal. Basically, it was responded that you don't have an ERISA claim here, and somebody at that point when they tried the appeal said, well, we don't even show there's been a benefit denial. So therefore, you don't have any rights to pursue an ERISA appeal. And so in effect, that sort of reinforces the argument we're making that there was no right provided under ERISA to pursue the full and fair review to challenge what was really a benefit denial. Okay. Thank you, Mr. Hufford. Mr. Tso, is that pronounced right? Yes. May it please the Court. My name is Thomas Tso. I represent the Department of Labor in this appeal. The crux of this case is relatively simple and straightforward. Tri-3 in this complaint is merely filing a claim for benefits as an assignee of ERISA plan participants who will ultimately be on the hook for any reimbursement of these benefits if their claim is denied or fails and if this appeal fails. Tri-3 is simply asking for this Court to resolve a dispute over plan interpretation, a dispute over the plan terms, and to enforce the beneficiary's statutory rights and rights under its regulations to have its due process and have its arguments heard within the plan. So if we don't vacate and remand, they'll have no day in court, I guess, right? Yes. Ultimately, this case is about whether Edna can just unilaterally determine the plan's terms without any sort of procedure, any claim procedure being applied to its interpretation. And that's clearly contrary to the statute. But they will get a day in court. Tri-3 does not have the ability to challenge the plan interpretation as currently based on the District Court's opinion because the District Court basically just adopted what Tri-3 has alleged to be the plan interpretation. Well, the case is dismissed. Yeah, the case is dismissed. They dismissed Tri-3's case. But now Edna, if Tri-3 says we're not going to return the money, Edna's got to file suit. Well, one of the curious facts is that even though Edna has alleged in letters, you know, had a claim against Tri-3, it has never filed suit. Okay, but it could file suit. Yes, it could file suit. But then it will have to also have as part of its suit a determination of what the plan means. I understand that. But there's going to be an opportunity to challenge this. If Edna files suit, Tri-3 is going to have an opportunity to challenge it. If it files suit, but that would also have to be under ERISA. That would be your argument. Yes, the interpretation under ERISA. Now, but the fact is that the law does not favor Tri-3 having, you know, the ability to file suit or Edna having the ability to file suit, but both of them could file suit and the dispute could be presented to the courts. It's a good point, though. Why isn't that the best way, allow Edna to just file suit for the money that it believes it wrongfully paid? That could also bring about a determination, could it not, of whether there was an adverse determination properly made or not in the context of ERISA? Well, ERISA specifically allows, in fact, favors the beneficiary to have its right under 502 to sue in federal court to clarify its rights under the plan terms. Is that why the Department of Labor is in this case? Yes. We believe the district court's opinion effectively allows Edna to determine plan terms unilaterally without providing a claim procedure. Why is that? Because it could just claim fraud and that's the end of the case? Yes. Under the district court's opinion, basically, you can write a letter that has some citation to the Medicare Fraud Act, and then you aren't required to justify your denial under the plan terms court provides. What is the issue? Was this an adverse benefit determination and that triggers the review process? Is that what this case is about? Yes. Ultimately, this case is about the fact that Edna has determined a plan term without providing the due process rights under ERISA. All it wants is reimbursement for money wrongfully paid or what it believes was wrongfully paid. I think that's the crux of the case. It believes it's wrongfully paid, but the district court and ERISA permits the beneficiary and the participant to challenge that belief through a structured claims procedure and then have the right to challenge it in federal court. Here, the district court may just assume that what it believes to be the plan terms is the correct interpretation of the plan. Under ERISA, Edna and the insurer has no absolute right to determine the plan terms. It has to provide the beneficiary a place. What do we have to determine? Whether a request for reimbursement amounts to an adverse benefit determination? Well, in this circumstance where the request for reimbursement is based upon a change in the original grant of benefits, so Edna had originally granted the benefits and now it's changing its mind and seeking the reimbursement. And its theory, as alleged in the complaint, is that it interpreted the plan incorrectly the first time. So right now, the reimbursement, based on a reinterpretation of the plan, should be subject to the claims procedure, which is specifically geared towards allowing the beneficiary and the insurer to go through a process to determine what is the proper interpretation of the plan. Now, what happens there? I mean, Edna could still walk away a winner in this case. Yeah, no, that is a possibility. But the issue is where the due process is provided. And that's where the Secretary's interest is not which plan interpretation is correct or not correct. It's merely giving the beneficiary a stay within the appellate process, internal administrative process, and a stay in court. And that was not allowed by the district court. Isn't there a little more at stake? I mean, granted there's an overpayment issue here. But also, I mean, they're under prepayment review now, which I'm sure they'd rather not. And on a going forward basis, they'd like to know what their rights are, right? Yes. 502A1B allows the beneficiary to sue to clarify what their rights are under the plan. And that is one of the requests for relief that TRIPHY is seeking here. And also the district court decision would bar the beneficiary from asserting that right to clarify what the plan terms are. So, you know, at the crux of this case, it's not about some commercial dispute between a provider and the insurer. The crux of the case is about whether the interest of the beneficiary has a day in court and the relationship between the beneficiary and its fiduciary. The question whether the insurer as the fiduciary has an obligation here by changing its mind and by changing its plan interpretation to give the beneficiary a chance to assert its own interpretation of the plan. And at the very end of the day, the beneficiary here is the one who is going to suffer if he has no day in court. He will be on the hook for whatever reimbursement that he originally thought was provided by the plan and had undergone treatment based on its assumption that it was covered by the plan. This is not a question of preemption, is it? No, this is not a question of preemption. And this is clearly the will period complaint rule. It's clear that the plaintiff has asserted an ERISA right and should be in federal court. Thank you. Mr. Strada? It seems like everybody is much taller than I am. Thank you, Judge Fuentes, and may it please the court. There are three issues that are important to the resolution of this appeal that I think have to be kept distinct. The first one is what law governs the dispute between the parties? And on that point, our submission is that the execution of a fraud using plain language is still a fraud and it does not become governed by Section 502 of the federal statute. The second issue is did the district court correctly ascertain that the dispute in this case is about fraud under the principles that apply under Rule 12b-6? And the third one is, is the Department of Labor correct in being concerned in this case that the conduct by insurers such as Aetna in trying to root out fraud will result in adverse consequences to the member patient? That first issue is probably the most, well, maybe it's because it's the first issue. It seemed like the district court looked at the complaint and then looked at the contentions of Aetna and adopted almost lock, stock, and barrel the idea that there was a fraud here and dismissed the case on that basis. I think the district court got that idea from the complaint that was filed in this case. And I would love dearly for the court to ask Mr. Hufford when he gets up again, what is the point of this lawsuit? If you look at Paragraph 19, they say they still have the money. We paid the money. We cannot get it, as Judge Fischer pointed out, until we successfully sue them for fraud. If you look at Paragraph 50, their real contention is that this is only and exclusively a suit under Section 502 and that, therefore, any fraud allegation that we might have is subsumed by federal law and extinguished by federal law. If you were willing to hold that that is untrue, they would consider this a loss because all the district court did in this case was to rule, as many other courts have, the Second and the Seventh Circuit, that if there is an allegation of fraud with respect to the utilization of plain language, that is not something that is extinguished by the federal statute. It does not become part of a Section 502 claim. If you look at the point of the complaint, it is to beat us to the courthouse, not so that they can get a favorable federal versus a state forum, as we might have chosen in Indiana, but so that they can seek a declaration that Section 502 extinguishes our fraud claim. Our point here is that just as the defendant in Biondi, who lied about somebody who was a patient but was not his wife, used term plans to execute a fraud by lying about whether somebody was his wife, so did Tri-3 here use codes, which are not part of the plan, but... Can you assert a fraud claim in connection with an ERISA review process? Can you assert fraud in connection with an ERISA review process? I think, yes, we can, and I think that that is necessarily what follows from the Biondi case and the Geller case in the Second Circuit. If I give you an example, it is almost a universal rule that a health plan will not cover vitamins. Okay? They're good, they're actually approved by the FDA, but they're just not covered. If you are a doctor who has thousands of patients and give them all vitamins and send a bill using the code that applies to lisinopril, which is a heart medicine, the computer at the insurer sees a claim for heart medicine, which is a covered benefit, and therefore wrongfully pays, but the execution of the fraud is the use of the lingo that has been promulgated by CMS for the submission of claims to furnish a false claim. I didn't have too much doubt that you could, in fact, assert fraud in connection with the review process, but what the plaintiff is saying here is my complaint was incorrectly dismissed at the 12B6 stage. I should have been allowed to go forward. If I go forward, all I want is the termination of my benefits to be reviewed via the ERISA process. But it has not... And in connection with that process, you can go back and say, I don't owe him a penny because it was all paid on the basis of fraudulent statements or incorrect billing. We don't have to cover this device. I think if you ask Mr. Hufford, he will say that he would like to live to fight another day in district court, whether the true essence of his complaint is to use Section 502 to extinguish the fraud claim. The district court was correct in apprehending that the essence of the case is about whether they can extinguish a fraud claim. You said that this was a race to the courthouse. And unfortunately, ERISA invites races to the courthouses where fraud claims exist. It doesn't mean that they weren't in a race that they were allowed to run, however. But that's an interesting point. And that may mean that there is arguable federal jurisdiction to obtain a declaration. That does not mean that they are right on the merits that Section 502 extinguishes a fraud claim. For example, if we had beaten them to the courthouse and they then have attempted to remove, we would have a completely meritorious argument under Davila that the removal was improper because fraud is an independent duty that doesn't turn on unplanned terms. That's right. But they beat you to the courthouse. Right. But that doesn't mean that in beating me to the courthouse to assert the same 502 claim, that is to say that 502 extinguishes fraud. But the question before us is whether or not the court should have dismissed this case on a motion to dismiss. And I was going to turn to that, Judge Fischer, because I think both DOL and Mr. Hufford have given very short shrift to the district court. It is obvious from the, even from the allegations of the complainant, that the essence of the case is a race to the courthouse because of Paragraph 50 says, you cannot get anything other than equitable stuff under Sereboff and Great West, and that the entire genesis of the dispute, and after all, in every declaratory judgment action, we have to look to ascertain whether there's federal question jurisdiction as to what the coercive action would be on which you're seeking a declaration. Paragraph 6 starts out by affirmatively declaring that Aetna has established and maintains a special investigations unit to detect, investigate, and prevent false or fraudulent insurance claims. The entirety of what follows is the detail of how that unit, which exists for the purpose of rooting out fraud, was dogging them, in their view, with correspondence. And as they say in Paragraph 20, unfairly accusing them of violating the False Claims Act. And that's fine, but the essence of their complaint is as well, we provided a service under ERISA for an ERISA plan. We provided a service. We submitted bills for payments. We didn't get paid. We want to get paid. No, the essence of their complaint is twofold. Number one is we submitted bill for services, and we did get paid, and we would like to keep the money without you suing us for fraud. I'll take that characterization, but it's about payment. It's about not having to reimburse money that was already paid. Surely, but you could have said the exact same thing about the Biondi case in the Seventh Circuit where the person lied about his wife. Doubtless, she did go to the doctor. Aren't the goals a little more modest here? What they seem to be saying is we just want due process, right? Under ERISA. That's what they're saying. But here is a very important aspect of the case. The process that they claim to be entitled to is one that they obtained by dint of an assignment and an appointment as a representative of the member patient. The process that they want is one that is accorded to the patient and which they claim by virtue of an assignment. Our point is that we don't have a dispute with the member because the member has not engaged in fraud. So the assignment's a nullity then? No, the assignment would be adequate if we denied the claim. If they had correctly labeled the vitamins as vitamins and we had then issued a ruling saying we don't pay for vitamins, the member and the provider as a need would have been entitled to take an appeal. So if it were an ongoing forward basis, let's forget about all the past money. If they put in a claim with you, you said, sorry, we're not going to cover it, then they'd have a right to an ERISA appeal? Yes. Haven't you, in fact, said that? I'm sorry? Haven't you, in fact, said that? Yes. You're not going to cover any more of these claims? No. What we have said is instead of accepting the submission of a number that goes into the computer and spits out a check automatically, when we see this code number from you, we're going to ask for the backup because now we know that it is vitamins and not hard medicine. And so it is something that we are lawfully entitled to do in every case, to ask for the backup for the services and all of the documentation that shows that the claim is a proper one. It is something that we don't ordinarily do because a lot of the adjudication of claims is made by computer because most state laws have prompt pay requirements that make it virtually impossible to engage in a claim-by-claim paper review. You're requesting a very substantial reimbursement. Well, that's true. It's in the hundreds of thousands of dollars. Yes. And they're saying, no, we submitted the right claims and we shouldn't have to pay you. Why is not ERISA implicated? No, we're not saying this is a dispute about coverage for coverage. We are saying you used the label for something that you knew was covered in order to knowingly get paid for something you knew wasn't. And so this is not a dispute over coverage as coverage. It is a dispute about the use of terms that are used in coverage to execute a fraud. And, again, if you review the case... It has to determine whether it was covered. Well, it is possible, as you said in the Pasca case, that in some of these cases in which there is an independent duty, there will be a need to consult the plan. In Biondi, it was obvious that there would be no fraud if live-in girlfriends or former spouses were covered, but only wives were. So there is always inevitably when you use the terms of a plan to execute a fraud, some need to consult the fraud. The question here is, is the claim that we are making one that looks to an independent duty that the provider had as every person in the state has not to engage in fraud, or is it a dispute really with terms of the coverage that are afforded to the member? This is not a dispute in the terms of the coverage that are afforded to the member. If he needed the type of gizmo that is actually covered by E-650, he would be covered. Our point is, you call the gizmo something else in order to claim coverage. It's like saying, I gave you an aspirin and got paid for heart medicine. That is the essence of the claim. So even though the execution of the fraud was done in plan terms, it is not one that involves coverage under the plan, because some of the things that are submitted and successfully paid are obviously covered. Our point is, you lied about what it is that you were giving to the patient. So you've told them on a going forward basis, we're not going to accept this, right? And tellingly, and you also know this from their complaint, they switched all of the claims to another subsidiary to try to get the payments through. Ultimately, Judge Fisher was quite right at the beginning when they said, when he pointed out, we have ruled on what the characterization of the dispute is about. And that's what we want. The district court's ruling stands only for the proposition that the federal statute does not preempt claims for fraud. The district judge has not ruled that we have a meritorious claim for fraud, nor has he ruled that we can get money. Indeed, we have to sue to get money. And so if and when we do that and we succeed, it would be impossible for the fear that DOL has. Did you address the fraud issue in your response in your motion to dismiss? Yes. The entirety of our motion to dismiss was, this is really in substance a fraud claim. They briefed that. The district judge looked at the paragraphs in their own complaint. And you can look at page A18 of the appendix. It may very well be that you prevail. I wouldn't make any comment on the merits of the fraud issue one way or the other. But I do have a concern that all someone has to say is fraud, and that gets you out of the district court, gets the complaint dismissed. Well, Judge Fuentes, if your concern is solely a 12B6 complaint, I think for the reasons I identified earlier, paragraph 6 and the paragraph cited in A18, it is unfounded. But if the resolution you would give to that concern is that I have to go to district court and file an answer that asserts fraud, that is fine in my world, so long as it is also clear that the claim for fraud I will make is not one that is extinguished by Section 502 of the federal statute. All I think the district court did here, as it's proper in all declaratory judgment actions, is to look at the substance of what the dispute is about, to anticipate what it is that you're seeking a declaration on. And if you look at paragraph 50 of the complaint, it's perfectly evident that what they really want is not so much a declaration about coverage, but to keep the money based on a declaration that the right that we claim to sue them for fraud does not exist under the statute. And that is the key to the case. So long as we win that point, I care much less about the 12B6 point, although I do think that the district judge was right on that as well. Thank you, Mr. Assange. Thank you, Your Honor. Mr. Hufford. I'd first like to focus on this issue of the race to the courthouse and whether Aetna could actually have to sue to collect the money. Now, first of all, what we are looking at here is whether plaintiffs, try three, has pled a valid or risk a claim. Aetna has not pled anything at this point. They have no allegations of fraud. All they said is they argued in their answer, in their brief, that there was fraud. But there's no allegation for the court to assess. All the court has is to look at the try three allegations. And in those, we have pled a valid or risk a claim. Yeah, but wasn't the district court in a situation where they were looking at, you filed a declaratory judgment action, okay, and you volunteered in your complaint that Aetna's concern involved fraud? I don't think. I'll finish. And you added other details as to why you believed they had no claim. Okay.  I think if you look at the complaint, and, again, this is really summarized in three and four of our reply brief, almost exclusively Aetna's position was this is not fraud. They themselves said in asking for the money back, we're not claiming there's misconduct. We have the right to get this money. They said even if there wasn't fraud, we're entitled to it back because it's not covered. Yes, but the other thing I want to make clear about is But it was precisely the basis for the district court's decision, wasn't it? It was, and that's because I think the court was accepting, really was accepting Aetna's argument in the briefs. Well, what's critical here is Aetna does not have to sue to recover here. They can, first of all, if they put the plaintiffs in prepayment review, and we pled, and it's in exhibit paragraph nine of the complaint, this is how Aetna operates on a broad basis, not just with try three. When they make a repayment demand, they put the provider into prepayment review, which means the provider's not going to get paid anything going forward. Our allegation is that itself is part of the scheme. The way they recover the money is effectively saying once we want the money back, you're never going to get anything paid going forward. We'll call it prepayment review, but that means you're never getting paid, and that's literally how they collect the money. Yeah, but you're going to have a right to contest all that. I mean, they can't just arbitrarily deny you through prepayment review without you having an opportunity to contest those future denials under ERISA. Well, potentially, but what happens is they have huge delays built in. They'll say, well, we're looking at it, we're reviewing it, we want more documentation. Yeah, but if you're right, you're going to get your money on those subsequent claims. Eventually, eventually, but it may not happen for years because of the delays built in by the process. But secondly, what Aetna can do is recoup. And what that means is, and they've done this with other plaintiffs. They haven't yet done it with Tri-3. But when a provider submits a new claim, instead of paying that claim, they'll say that's appropriate covered service, but we're not going to give it to you. We're going to apply it to this debt you paid for us. If they do that, they collect without ever having this come to issue. But you would have a suit over that. They can't just offset over a prior dispute. Your Honor, we've got a number of cases against Blue Cross, against United, where they're doing this exact thing. They offset, and they claim the absolute right to do it, and ERISA doesn't apply. That happens all the time, including by Aetna. And what they're doing is taking the money without the due process. And that goes to the final issue. Even if they sue under fraud, the question is, there's never been a full and fair review under ERISA, which means you don't have the administrative record. I mean, the entire premise of the full and fair review, the courts have recognized, and that was as far back as the Grossmiller case in 1983. The full and fair review is to allow a court to have an administrative record to evaluate what the administrator did in denying benefits. But if you don't have the full and fair review, when the issue comes into court, there's no basis to really challenge and understand what they're doing. That is why it's a due process claim here, Your Honor. Mr. Hufford, thank you very much. Thank you. All right, thank you very much.